And here, for the appellant, we have Ms. Pitcher and for the appellee, Mr. Silvester. Each side, we have 10 minutes. So, Ms. Pitcher, if you would like to make a rebuttal argument, please remember to stop short of using up all your time and save some. Of course, if the panel has questions, we can take them on. But I'll see if they have questions at the end. Normally, we would like you to cover in your time your planned argument and responses to whatever we ask. Thank you, Your Honor. May it please the Court, I'm here on behalf of Petitioner Richard Wildin. Our argument in this case is fairly simple. It's simply that Mr. Wildin received ineffective assistance of counsel because his trial attorney failed to test the one piece of physical evidence in this case which could have given him the key to his defense, which was that he was first assaulted and dragged out of his van by the decedent prior to the shooting, in which the decedent lost his life. Let me tell you what's bothering me about this case from the appellant's side. And you can address it if you like anywhere in your argument. It seems to me that we've got a determination that the trial counsel, the defense counsel, made a tactical decision. And there's at least a reasoned justification for a defense counsel thinking, if I don't test this shirt, if I don't test the blood on the front, it will let me argue that my client I'm defending was grabbed from behind and his bloody scalp touched the chest of the attacker from behind. But if I test it and it shows just the victim's blood, I can't even argue that. So why wouldn't that be a reasonable judgment that could be made by a counsel? In other words, it looks like this isn't a case where we're speculating about whether there was a tactical decision. In the post-conviction proceedings, as I understand it, there was expressed testimony from the lawyer, the defense lawyer, saying I made a tactical decision. That is correct. That is what he says. Initially, in the pretrial proceedings of the trial, he indicated that he was intending to test it. He did, in fact, draft the motion for expenses to test. I understand that. So he ultimately changed his mind. Trial lawyers change their minds sometimes. And my argument is quite simply that he didn't make a sound strategic choice. Judge Cooney takes that same attack that you just expressed and lists a number of pieces of evidence that he feels somehow would have been undermined by the discovery that the blood on Mr. Mumford's T-shirt was, in fact, Mr. Mumford's. And my argument is simply that it would not have detracted from any of that argument to discover that. I don't think the jury would have been at all surprised to hear that the blood on the T-shirt belonged to the victim as opposed to my client. And so it's a fairly minor change that would have occurred. There's one line in the entire closing argument that the attorney would not have been able to state, which was, as Judge Cooney indicated, that probably, you know, let me find the exact line. That's not the only place where the blood was. There was a box inside the back of the van, and there was a bumper on the back of the van. Now, put yourself back in the situation. He goes and tests it, and it turns out that the victim's blood is shown to be on the box inside the van and on the bumper. That sure blows a hole in self-defense theory, doesn't it? Not actually, because the witnesses are pretty inconsistent, I have to concede, but they all say that the shooting occurred away from the van, so there wouldn't be any reason for the victim's blood to be in the van. Sure it is. The defendant goes and grabs him, brings him into the van, beats him up in the van, the man escapes, and the shooting takes place outside the van. There's no evidence to support that. There is if there's blood of the victim inside the van. Well, in any event, I'm not arguing that the attorney should have tested those items, and I'll tell you why. The T-shirt is the only item that would have showed that there was actual contact between my client and the decedent. You mean the lawyer would just say, I'm just going to take one, and I'll leave open all the rest of these? Well, that's what the government did. I mean, the government picked and chose. I'm not saying that. I didn't ask what the government's doing. I understand what the government's doing. But you think that a logical lawyer would just take one piece of evidence he tested and not test the others? Well, I think that's a choice that could have been made, but I don't think there's any support for the theory that the witnesses saw an altercation where Mr. Wilden was beating on Mr. Mumford in the van where there would be his blood. The testimony was that Mr. Wilden was assaulted in his van, although the witnesses don't say by whom. Some witnesses say it was by Ms. Casa Cordo. Correct. I mean, obviously this happened quickly, and the witness testimony is somewhat inconsistent. That's why I think it is so crucial that there be this evidence. And Judge Cooney says, well, there's a 50-50 chance. And I think as a trial lawyer, when your client tells you, and when there's a recorded statement from your client saying that you've been beaten on the back of the head by somebody and pulled out of a van, that there's more than a 50-50 chance that the blood on the front of that T-shirt belongs to your client. There's an unspoken assumption that there's more than a 50-50 chance that your client is telling you the truth. Well, that's the evidence you've got to go with because that's the evidence that you're going to hear. I thought there was evidence they were fighting before this. That was somebody else. The client got into an altercation at the bar with another individual. I know that. But then I thought he gets in an altercation first with the big guy from the bar, and he gets sucker punched. And then after that, he gets in some type of altercation with his ex-wife. And then her boyfriend, the victim, comes out. It's a verbal altercation. Maybe to protect her or something. And then the testimony is sort of not totally consistent. But I thought that there was some fight between the appellant and the victim before the shooting, like a physical tussle. My recollection of evidence is that Mr. Wilden goes to his van, we can assume, to get his gun because he feels like he's in danger. That he's attacked there, he's dragged back out of his van, and then the fight occurs in the parking lot outside of the van. Okay, but there's a fight. In other words, before, when they're out there, they're hitting each other or something like that. It may have occurred. So even if the blood on the shirt is the blood of the appellant, I'm not sure what it would prove. And also, because it could still be murder or attempted murder or manslaughter, if the jury believes that the appellant pulled out his gun and shot the guy after the guy was down or something. That's true. But what our point is that this crucial piece of physical evidence would have corroborated what Mr. Wilden had said, which was that he was assaulted from behind by the big guy, as you put it, Thumper, and that he was then dragged out of his van by that person and engaged in physical assault. And this all happened very rapidly. At that point, it was... Actually, I didn't mean Thumper as the big guy. Oh, I'm sorry. The other big guy. The first guy. This was Thumper. And that he had, and this all happened quickly, that clearly the way the blood from the back of his head got on the T-shirt was by being yanked out from that van. So his lawyer argued that. His lawyer made a good argument to the jury, saying that's what happened and there's no evidence to the contrary. That's true. And that's what I thought the district court thought was that was a tactical judgment the lawyer was free to make, that I'm better off arguing this without pinning it down because if I try to pin it down and it turns out it's not the blood of my client, then I can't quite make that argument. I want to answer your question. I also want to reserve some time. So if I can answer your question. Yeah, why don't you go ahead. We'll give you an extra minute. Thank you. In this day and age of OJ Simpson and Court TV, I don't think jurors are unsophisticated, and I think they're well aware of the fact that the defense can test evidence. And so you're saying that the jurors would be swayed by the fact that the defense attorney says, well, it probably is my client's blood, although the government didn't test it. I don't think the jury's going to be all that impressed by that. They know that the defense can test the blood, and they're going to wonder, well, why didn't the defendant test it? I don't think you said it probably is. I think you said that's what happened. What he said exactly was that may well be my client's blood. Okay, and there's no evidence. He suggested there was no contrary evidence. He doesn't say that exactly, but. Correct me if I'm wrong. Wasn't part of his argument that the government did a sloppy job on this and they didn't do any testing? He did argue that, that there were other items, such as the decedent's hands and other things that were not properly tested. Yeah, okay. Okay, well, just for your planning purposes, we'll give you two minutes for rebuttal. Thank you very much. So that you can illuminate us further, and we appreciate it. And we will now hear from the government. May it please the Court, again, Tim Sylvester for the responding superintendent in this case. I apologize for my voice. There's no dispute in this case that the defense counsel at the time made a tactical decision not to have blood tested. In fact, in the excerpt of the record is a letter he sent out to the defense investigators saying, don't test that, I have made a tactical decision not to have it tested. A couple of things I want, I don't have a whole lot to add to my brief unless the Court has specific questions, but one thing I do want to clarify about the facts is that there was no dispute that as this was going on, the defendant, the petitioner, had a serious head wound in the back of his head. And there was a couple of possible explanations for it. One of which is that he was dragged out of the van and hit his head on the bumper or the toe. There's a toe ball at the back of the truck. Didn't the defense lawyer argue that? Yes. And there was state evidence that the injury was there. It was oozing blood still at the time he went in for booking. That's right. It was oozing blood. He used that argument that he had to be dragged out because that's the only way that injury occurs. That's right. That's right. Because I think the evidence, the first fight with the guy in the bar was that he was uninjured as a result of that. And then he goes to the vehicle to get his gun. He announces he's going to go to the vehicle to get his gun. And that's when he has the run-in with his wife and her boyfriend. And there's a dispute about precisely what happens, but there is no dispute about the fact that he ends up with a serious head wound in the back of his head. That is bleeding. He has blood all over his hands. And then there's the grappling with the victim, and the defendant shoots the victim at a range of about two feet and kills him. The state's evidence was the defendant was standing over the victim at the time with his head wound, with the blood on his shoulder, with the blood on his hand. The fact that he might have dripped blood on the victim at the time he shot the victim is hardly surprising. The fact of the matter is that whether there's the defendant's blood on the victim's T-shirt proves absolutely nothing. It's absolutely irrelevant. And I think what was going on here is the defense counsel was saying, this doesn't really prove anything significant, but if I don't get it tested, I can complain that the state hasn't tested his blood. And also it gives him a basis for arguing that the victim grabbed the defendant, bear hug style, and got his head on the back of his shirt. Now, one of the things I want to clarify about the facts is that the testing of the victim's T-shirt, there was several samples that were taken from the T-shirt. Most of them were the victim's blood, not the defendant's. There were only two spots on the T-shirt where there was any of the defendant's blood. There's no evidence in this record how much blood was there or whether it was of any significant amount that could have actually supported the defendant's theory that the victim pulled him against his shirt. And so even if you accept the defendant's petitioner's evidence at this point, it really proves nothing, unless the court has questions as to that. Any questions of Judge Bailiff? No, I have no further questions. We have no further questions. And I said we would give you two minutes rebuttal. You may not need it all, but if you'd like it, go ahead. I just have one comment. And that is that the government is telling you that this was absolutely irrelevant, and that might be true if you're talking about a head wound on the front of Mr. Wilden where he was leaning over someone and blood was dripping from him. What we're talking about is an oozing wound on the back of his head, which certainly would not have caused the same kind of effect. He'd simply been standing over him, which is not the testimony of the most credible witness in this case. What this evidence clearly would show is that Mr. Wilden was grabbed from behind, assaulted, and that he was dragged out in such a way that he actually physically had contact with the front of the decedent's shirt. And it really, I think, would bring home to the jury that he was not the person who began the physical fight. That was Mr. Mumford. Mr. Mumford attacked him. Mr. Mumford pulled him back out of his van. Let's assume that's true. Didn't the jury have to decide something like that to convict him only of manslaughter and not of murder or attempted murder? They had to decide that he didn't intentionally do it. So he did shoot the victim. So whether he was grabbed or not... His argument was that it was either in self-defense or that the gun actually went off accidentally in the struggle. But being grabbed from behind is not deadly force, so that that wouldn't justify shooting someone in self-defense. No, but if it were an accident, if he actually had the gun ready to defend himself against who knows how many people who may have taken the other person's side since he was there with a lot of his friends and Mr. Wilden was there alone, I think that would have been justifiable force. Okay, thank you. Thank you very much. The case will be submitted. Now, we only have one case left to argue. Would you like to do it now or take a break? No, I'd like to do it now. Okay. Okay, we'll continue then with U.S. v. Asbury. In this case, we have four appellant. Asbury, we've got Nancy Bergeson. And then we have Mr. Fred Winehouse. There we go. Thank you. And both sides have ten minutes. Please keep back some time for rebuttal if you want to make a motion.
judges: Wallace, Gould, Bea